All right, good afternoon, Mr. Sigali. Did I pronounce that correctly? You know, I had a 50-50 shot and I blew it. I'm sorry. Mr. Sigali, are you ready to proceed? Yes, Your Honor. Good afternoon, Your Honors, and may it please the Court. This is a case about equity and property rights and being able to rely on valid orders of court and being able to rely that opposing parties will follow those orders. The April 28, 2023 preliminary injunction by the Southern District of Illinois against the Illinois Protect Illinois Communities Act, which I'll refer to as PICA, had the substantive effect of restraining the state's conduct. That's Frick v. Jones in the Fifth District. And while that preliminary injunction entered by Judge McGlynn in the Southern District of Illinois was stayed six days later by the Seventh Circuit, while that order was in effect, the state was bound to honor it. Now, the state knows this and knew this at the time because when it asked for a stay, it wrote that the preliminary injunction enjoined the defendants from enforcing PICA, which restricted the, quote, sale, manufacture, and possession, that's the bold-faced word, end quote, of the covered firearms and magazines under that statute. This is a narrow case. Plaintiff only wishes to comply with the PICA requirements. He is not challenging PICA. He is not trying to relitigate any injunction. But he should not be forced to give up his property or face criminal penalties. In Plaintiff's briefing, we cite numerous instances in numerous different contexts of litigants, individuals, et cetera, that were entitled to rely on orders of court that were entered. In fact, it's the only way the system works. I cited two Colorado cases of Klarner and Franzen, where a trustee incurred fees in reliance on court order that was later vacated, but while it was in effect, the trustee was entitled to rely on that order. There's a flip side to that coin. When a court, a circuit court, enters an emergency order of protection, the defendant, respondent in that case, might think to himself or herself, as the case may be, there's no way this order is going to be made permanent. This thing is going to be thrown out at the next court date. And maybe that person's right, but it doesn't matter. That temporary, that emergency order of protection is in full force, in effect, and if that respondent violates it, he or she is going to get punished. Or at least face the penalties for it. Why? Because it doesn't matter that it eventually gets vacated. What matters is, is that while it's in effect, it's in effect and it has to be followed. The Sanders case out of New Jersey said the same thing. It makes no difference if the emergency TRO is later vacated or dismissed. And it's not just penalties, but it's also benefits. I cite it to the Stewart case out of Georgia, where a husband in a divorce case got a court order extending his time to respond to certain discovery, so that when later, I'm assuming a different judge, I can't figure out how else this would have happened. But a subsequent conflicting order said, no, you're in default, I'm entering sanctions. The appellate court said, no, he was entitled to rely on that extension order. So when he gets 90 days from an order, and then you want to sanction him and default him 30 days later, well, that doesn't work. He was entitled to rely on the first one. Your Honors, the second district said in People v. Herman that protection of the right of property is one of the most important objects of government, lies at the foundation of constitutional government, and is necessary to civil liberty and free institutions. And that's what we're dealing with here. The plaintiff purchased an item that he was entitled under law to purchase. And I agree. A quick question. Along the lines of everything you just said leading up to this point, the one week in which the federal injunction was in place, the state of Illinois abided by that. They sold him these items. Because during that week, it was still lawful for him to buy them. So I'm a little bit lost on what the examples you gave in those other cases seem to be violations that happened while the order was in place. So while the order was in place that said, State of Illinois, you cannot enforce this ban on selling and purchasing guns, because the possession one came later, these guns were sold lawfully during that week. So the state did abide by the federal injunction that lasted one week, was in place one week. So I'm a little bit confused on that argument. Because the operative part of the statute, of the court order, that the state is not complying with, was the portion that allowed possession. And it is very hollow for the state to say, okay, we're allowing you to purchase them. We are allowing you to, well, really, we're allowing sellers to sell them and we're allowing purchasers to purchase them. But you don't get to keep them and you don't get to possess them. You get to either get rid of them or face criminal penalties. That reminds me, quite frankly, of the city of Chicago and the Eazell versus Chicago firing range case. Where the city of Chicago, after being told that its handgun ban had been overturned in the Supreme Court's McDonald case, passed a law that said, okay, fine. You can possess firearms if you have the requisite training. And by the way, we're banning everywhere that you might get trained. And the concurrence in striking that down noted that the city of Chicago was being too clever by half and thumbing its municipal nose at the Supreme Court. And I keep coming back to that when I think of this case. This is what the state is doing. Okay, fine. You get to sell them, fine. You want to buy them, fine. You just don't get to actually keep the things that they were allowed to sell and you were allowed to purchase. And again, it's not that Mr. Reese is asking to possess that firearm in noncompliance with PICA as if PICA doesn't apply to him. It does. But he should be allowed to register that firearm pursuant to PICA and keep it in accordance with any other covered firearm that was purchased legally. And that's where the difference comes in. Ms. Chisagel, how many days after the injunction was entered did your client buy the gun? It was entered on April 28th. I think, I would have to, it's in the briefs because I submitted the documents. But you acknowledged that the Barnett injunction was entered and then he bought the gun. Oh, yes, totally. He bought the gun first and then a few days later bought the attachments. Yes, yes. Both of which were after the injunction was entered. Not only was it all after the injunction was entered, but it was all before the stay was entered. Because as I note in one of the briefs, if the plaintiff was attempting to argue somehow that the rules didn't apply to him and he had purchased these items after the stay had been issued, we wouldn't be here. There'd be no legal leg to stand on. So all of this was purchased during that injunction period. The plaintiff compares this situation to other cases where local, where statutes are held unenforceable due to preemption. In both cases, this situation where a law is enjoined by a federal court and the law is preempted, the individual rights in that situation are honored as opposed to over the statute. And that's the situation I think that we're dealing with here now. Mr. Reese did nothing wrong. He complied with the law. He acted in reliance on a court order that he was entitled to rely upon. It's just the state saying, well, you think you're cute, you purchased during this injunction week, but we're going to show you and you are not going to be allowed to continue to keep that firearm. I just want to point out, because of the rebuttal, I want to make sure I've said it. The state has made a big argument in the lower court here that this is an equitable estoppel case. And why isn't the plaintiff pleading equitable estoppel? And if the plaintiff's pleading equitable estoppel, he's not doing a very good job of it. The plaintiff is not pleading equitable estoppel. I don't believe equitable estoppel applies to this situation. Equitable estoppel requires an affirmative act by the government entity in question. And plaintiff's claim is not that the state government did something here, any affirmative act. This is just, there was a court order entered, and equity and property require that the government comply with that court order. But to the extent that complying with a court order counts as an affirmative act, well, then I think plaintiff does meet the standard of equitable estoppel. There is reasonable reliance here. This was a valid court order. And if that was an affirmative act, complying with the court order, which we're alleging they didn't do, but to the extent it was, then the state should be estopped as well from taking away Mr. Reese's property rights. Your Honors, I see I've got, sitting here coming under two minutes or so. If the court has any questions, I'm happy to keep talking, but. Just, do you have any questions? No. Is there anything in the record that would suggest how many similarly situated individuals are to Mr. Reese? There is nothing in the record, and I don't know the answer to that question. I wouldn't take the answer if you didn't know, if it wasn't in the record. I thought perhaps for, I thought of that as I was coming over here, and anecdotally I might have spoken over the last couple years to one or two maybe who said, oh yeah, but I can't even swear to that, so maybe, maybe there's another one out there, but otherwise I really don't know the answer to that. Thank you, sir. All right, I have no other questions. Thank you, Your Honors. I'll back for rebuttal. Thank you. Yes, you will have time and rebuttal. Thank you. All right, now, I'm all for one. Ms. Chenik? Got it, I won't. Did I get that one? All right. You may proceed. Thank you, Your Honor, and may it please the court. Counsel, I'm Assistant Attorney General Leigh Johnig for the defendants. In 2023, the legislature passed the Protect Illinois Communities Act, which imposed restrictions on what the act describes as assault weapons and large capacity magazines. There are two relevant provisions for this case of that act. The first is that the act prohibits purchasing these weapons, and this went into effect immediately upon the act's passage on January 10, 2023. The second provision prohibited possessing these weapons beginning a year later in January of 2024, unless the person attests to the Illinois State Police that they owned the weapon prior to the act's passage. So essentially, the act sort of cut off the number of weapons that could proliferate throughout the state. If you already had one, you could keep it, but other than that, there were no more that could be acquired. This act was enjoined by a federal court for six days in the spring of 2023, so after the purchase restrictions went into effect, but before the possession restrictions went into effect. That injunction was stayed and later vacated, and so therefore the act has been in force ever since the purchase restrictions took effect this year. Or excuse me, last year. During those six days, the plaintiff purchased some of these prohibited items. There is no dispute that the act has not been enforced with respect to those purchases during those six days. But what the plaintiff now asks the court is to enjoin the possession restrictions now and going forward. But there is no source of law that entitles the plaintiff to that relief. Because the injunction was vacated, the act is therefore in force, and the text of that statute is very clear that possession of these weapons is not permitted. That is a policy decision that was made by the General Assembly. And courts must follow these express, you know, this express will of the legislature clearly expressed in this statutory text, unless there is some constitutional defect with the law, which the plaintiffs are not raising here. So that alone, I think, is what establishes that he's not entitled to an injunction of the possession restrictions, which is what he's expressly seeking in the complaint. I wanted to ask, when he purchased the gun and the accompanying equipment, it was lawful for him to both purchase it and to possess it? Yes, because the possession restrictions had not taken effect. So there was no one who was prohibited from possessing at that point. What the plaintiff offers are two bases for the relief that he's seeking, but neither of them entitles him to this relief. So it's the injunction itself, the Barnett injunction, and then it's his reliance on the injunction. So I want to kind of take those two in turn. To start with the Barnett injunction, as, you know, I think plaintiff agrees, that injunction has been vacated, and so it is no longer in effect. And the plaintiff acknowledges that the State has complied with that injunction while it was in effect. All of the authorities that he cites about complying with court orders are about complying with court orders while they're in effect, which, again, there is no dispute that the State has done that. What I sort of understand the plaintiff to be arguing, especially in the reply brief, is that there's some sort of impact of that injunction that carries forward to today, even though it's been vacated. And I'm just not aware of any authority that suggests that that's even possible. Once injunctions are vacated, they are vacated, and the statute comes back into effect. And again, courts are bound to apply the policy decisions that are clearly expressed by the General Assembly. If I may, assuming he was a savvy consumer, he's looking at an injunction that says there's a substantial likelihood of success on the merits. Can you discuss whether he can rely on that in any fashion? I think the fact that the injunction stated many times that it was not a final order reflects that any reliance on that injunction was not reasonable. It states many times that it's not a final order, that there's only a likelihood of success. It's a preliminary decision. And so all of these things together reflect that reliance on that injunction was not readable. But there's an even bigger problem, I think, with the plaintiff's reliance argument here, to go to this kind of second basis that he proffers for enjoining enforcement of the law. And that's that I'm not aware of any authority that suggests that equity or reliance can overcome application of a clear, unambiguous statute. All of the cases that were cited by the plaintiff in his briefs are about reliance on discretionary court orders, about things like child support, and sort of things that court orders sort of have discretion to enter. But what we're talking about here is a court order enjoining enforcement of a statute. And again, I'm just not aware of anything that suggests that equitable reliance of any kind, whether you call it equitable estoppel, whether you call it something else, allows any kind of statute to be kind of overlooked in that matter. Again, there are limitations on what the General Assembly can do. If the plaintiff wants to bring a constitutional challenge to this law, he is certainly allowed to do that. And many people have done that and are still doing it. So that's the guardrail that is placed on the policy decisions that are made by the General Assembly. But outside of that, you know, I'm just not aware of any authority that permits that kind of disregard of a statute. So I do want to just kind of address this argument that the plaintiff claims that he's not actually seeking to sort of avoid enforcement of the statute, but he actually just wants to comply with the statute. But, you know, respectfully, that's essentially saying he wants to comply with some of the statute. He wants to comply with the statute that permits possession to continue, but he would like the court to kind of tweak the text of it to say that, well, you plaintiff can permit, can continue possessing these weapons, you know, as long as you purchase them during these six days, not if you purchase them before January 10th, 2023. And, again, that would effectively be ignoring this policy decision made by the General Assembly. You know, and the General Assembly, you know, if the plaintiff wants to suggest that the General Assembly amend the law to permit this, you know, that's also permitted. But, again, you know, this is a decision that has been made by the legislature. And then just to also briefly address the Ezell case, because that was not cited in the briefs, and so I don't quite have the facts in front of me, but my recollection is that that's a Second Amendment case. And I think that that sort of reflects the problem with the plaintiff's whole case here is that, you know, a constitutional defect in a statute is a basis to enjoin enforcement of a statute. But reliance and a vacated court order are not a basis. And, you know, I think that that's sort of what the, you know, even in the plaintiff's description of that case, what we heard is, you know, the city council was kind of being too cute and was sort of trying to pull a fast one. And so, again, that reflects that what the problem there was with the text of the statute itself. And if there's a problem with, you know, a constitutional problem with the statute, that's, you know, a claim that is available to him, but that he hasn't brought. The defendants here have to follow the text of the law that the General Assembly passed, and that is what they've been doing. And, you know, if the court has no further questions. No, I have no further. Thank you very much. I have no questions. Thank you. Thank you. Mr. Seagal. Thank you. Just a few points, if I may, Your Honors. As I noted before, but reiterate now, the state never complied with the part of the injunction that allowed possession. To answer your question, Justice Davenport, the purchase of the firearm at issue was made on April 29th, the day after the injunction went into effect. Then the attachments form the third and fourth? Yeah, yeah. And had the state complied with the possession requirement of the injunction, the state would have allowed Mr. Reese to register that firearm on April 29th. He would have had a serial number, and he would have been able to comply with that portion of the PICA statute. The state, but never allowed that. They put up that firewall or left that firewall in place the entire time. Knowing that no one would ever be able to register anything that they purchased, including Mr. Reese and maybe speculative others, but again, I don't know and the record doesn't say. The state said that Mr. Reese didn't have reasonable reliance on that injunction. But the state knows darn well that the injunction was in full force against that law, and that Mr. Reese had the right to rely on it. We know this because they rushed to the Seventh Circuit to stay that injunction. And they didn't file for the stay saying, oh, well, this isn't a final order, so Seventh Circuit, you need to stay this because in 28 days this will kick in, or we'd like a stay even though really nobody gets to do anything under it anyway, but, you know, belt and suspenders. They didn't do that. They wrote in the stay petition that the injunction restricted parts of PICA, or enjoined the parts of PICA that restricted sale, manufacture, and possession. As of that moment, they did that. They wrote that because they knew that that was the case. Mr. Reese had the right to reasonably rely on it. It isn't, he had the right to reasonably rely on that order, and the state's own writings acknowledge that. To borrow a phrase, could someone suggest that Mr. Reese was too cute by half as well? No. I mean, he was relying on a valid federal court order. It did get stayed, but he didn't know at the time it was going to get stayed. He didn't know how the litigation was going to progress. He didn't know the Seventh Circuit was going to issue a stay or overrule the injunction eventually, or how the trial eventually would work out. The case is in the Seventh Circuit again. So he couldn't have known any of those things. I mean, the state was arguably in the better position to know that as a litigant, but, again, Mr. Reese wasn't being cute. He just, okay, here's an opportunity, and this is something I want to do, so I'm going to take advantage of that. That's not being cute. I don't want you to take up all of your time. No, thank you. The last thing I just want to point out is the Lazenby case that talks about the application of a statute unless it impairs the rights that a party possessed when acting. If the applicability of that statute increases a party's liability for past conduct or imposes new duties with respect to transactions already completed, that's 2010, our state Supreme Court, and I believe that those principles apply to this case and what Mr. Reese did. My time is up. Unless there's any questions, I thank the court for hearing me today. Ms. Stillman? Yes. Prior to April 29th, had Mr. Reese ever purchased other assault weapons or assault weapon attachments that he had registered or not?  That's an excellent question, and I have no idea. I never asked him. I'm just wondering whether he was familiar with requirements of registration. Well, I know he was familiar enough with the requirements of registration that he was willing to do it and wasn't allowed to. Okay, thank you. Actually, I don't know the answers to any other things you might own. Thank you. Mr. Connolly? None. I don't have any questions either. Counsel? Thank you all very much. Thank you to both of you, and we will issue a decision in due course.